*Colpitts & Chappell*, for plaintiff in error.

*Smith & Howard*, for defendant in error.

---

## POLICE AND FIRE CHIEFS.

[Circuit Court of Butler County.]

STATE OF OHIO, ON THE RELATION OF JACOB SIPP, V. CHARLES A. STROBLE.

Decided, February 2, 1904.

*New Municipal Code—Its Provisions With Reference to Chiefs of Police and Fire Departments—Identity of an Office—To Be Determined by Its Functions—A Superintendent of Police Under a City Charter Becomes Chief of Police Under the New Code—Chief of Fire Department.*

1. The office of superintendent of police under the recent charter of the city of Hamilton has the same functions as the office of chief of police provided for under the Municipal Code of 1902, and is therefore identical, and being identical the occupant of the office of superintendent of police on the day the new code went into effect became, by virtue of Section 167 of that code, the chief of police of the city of Hamilton.
2. The same principle applies to the chief of the fire department of the city of Hamilton.

JELKE, J.; GIFFEN, J., and SWING, J., concur.

We have had no trouble in coming to a conclusion that the charges filed with the mayor against the relator were insufficient

and that the trial under the same was void and of no effect in law.

We are further satisfied that the appointment of C. A. Stroble was contrary to law, Section 149 of the Municipal Code providing "The Chief of Police shall be appointed from the classified list of such department," because on the 15th day of August, 1903, the classified list as required by Section 153 in the Municipal Code had not been made up and established, and if it had, C. A. Stroble could not have legally been on it as he had neither passed an examination nor been a member of the police department prior to May 1, 1903, the time when the new code went into effect.

The only real difficulty is to determine the official status of Jacob Sipp, the relator herein, between May 1, 1903, the day when the new Municipal Code went into effect, and August 15, 1903, the day of the appointment of the said C. A. Stroble, and said Sipp's right under Revised Statutes 6764 to maintain this action. Prior to May 1, on April 28, 1903, Jacob Sipp was duly appointed to the office known as "superintendent of police" as provided by Section 18 of the then existing charter of the city of Hamilton, created by an act of the General Assembly passed March 25, 1898.

Section 149 of the new Municipal Code provides that:

"The police department of each city shall be composed of a 'chief of police' and such inspectors, captains, lieutenants, sergeants, corporals, detectives, patrolmen, and other police court officers, station-house keepers, drivers, and substitutes as shall have been provided by ordinance or resolution of council."

The cardinal question is whether or not the office of *"superintendent of police"* created under the charter is identical with the office of *"chief of police"* provided in the new code. If the office is identical, since the same permits of but one incumbent, then Mr. Sipp became by virtue of the new code, going into effect under Section 167, the chief of police of Hamilton. The case of *Kirker* v. *Cincinnati,* in the 48th O. S., page 507, is instructive on this point in distinguishing the case of *Reemelin et al* v. *Mosby,* 47 O. S., page 570:

"It is argued that the separate character of the two boards is recognized in *Reemelin et al* v. *Mosby*, 47 Ohio St., 570. This may seem so from the second clause of the syllabus. But no such question was involved, nor considered or necessary to be considered, in that case. It is true that the members of the new board are there referred to as members of another board. In one sense this is true, in another it is not. *With regard to the personnel, a change in the membership makes another board, but with regard to its functions, the board remains the same so long as its functions remain unchanged.*"

Here the court points out, that, under the general law, where the issue is as to the validity of their acts, the identity of two boards is to be determined by the identity of their functions, no matter what the respective names of such boards may be and regardless of the persons composing them. But here the general law is further modified by the express civil service provisions of the Municipal Code as to the police department, which provisions concern themselves particularly with the personnel of the office.

These provisions graft onto the law of the organization of the police department the principle of retaining in office those duly appointed to office. Section 167 provides:

"No officer or employe in the department of public safety shall be removed or discharged except for cause; and the cause of removal of any person shall be forthwith stated in writing by the mayor to the board, and shall be filed by the said board in its office, and shall be open to public inspection. No officer, secretary, clerk, sergeant, patrolman, fireman or other employe serving in the police or fire departments of any city of the state at the time this act goes into effect shall be removed or reduced in rank or pay except in accordance with the provisions of this act."

In the case at bar we find a substantial identity in the functions of the offices of superintendent of police under the old charter and of chief of police under the new code. We further find explicit statutory direction that the organization of the police department under the new code is to be made to fit so far as possible the conditions existing under the old charter for the purpose of preserving the personnel of the department and the

standing of the persons composing it.   In this way only can Section 167 be given due effect.   It would be impossible in any other way to keep Jacob Sipp on the force without reducing him in rank, as required by this section.   Hence we are of opinion that on and after May 1, 1903, Jacob Sipp was under the law chief of police of the city of Hamilton.

No matter what the Supreme Court might now hold as to the constitutionality of the act of March 25, 1898, the decision of the Supreme Court in *State, ex rel Attorney-General,* v. *McMaken,* 59 O. S., 731, gave sufficient color of law to make Jacob Sipp a *de facto* officer on May 1, 1903.   We are sustained in this view by what was evidently the view of the mayor and board of public safety at the time when they instituted proceedings against said Sipp.   The idea that he could have sustained any other relation to the police department was only invented after the complete illegality and vanity of the proceedings against him became obvious.

We are therefore of opinion that a judgment of ouster should issue against C. A. Stroble and of re-instatement of Jacob Sipp.

*M. O. Burns, Judge Neilan* and *Ellis G. Kinkead,* for the relator.

*Richard Shepherd* and *Warren Gard,* contra.